UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Smart City Holdings, LLC; and Smart City Networks, L.P., <br><br> Plaintiffs, <br><br> vs. <br><br> showNets, LLC; and Scott Nussbaum, <br><br> Defendants. | Case No.: 2:13-cv-01751-GMN-GWF <br><br> **ORDER** |

Pending before the Court is the Motion for Temporary Restraining Order (ECF No. 3) filed by Smart City Holdings, LLC ("Smart City Holdings") and Smart City Networks, L.P. ("Smart City Networks") (collectively, "Plaintiffs").

## I.  BACKGROUND

Plaintiffs filed their Complaint (ECF No. 1) against entity Defendant showNets, LLC ("showNets") and Defendant Scott Nussbaum, an individual, alleging six claims for relief: (1) Misappropriation of Trade Secrets, Nev. Rev. Stat. § 600A against Nussbaum and showNets; (2) Tortious Interference with Prospective Business Advantage against showNets and Nussbaum; (3) Declaratory Judgment, Nev. Rev. Stat. § 30.010–160; (4) Breach of Contract against Nussbaum; (5) Breach of Implied Covenant of Good Faith and Fair Dealing against Nussbaum; and (6) Tortious Interference against showNets.

The same day, Plaintiffs filed the instant motion requesting injunctive relief. (ECF No. 3.)  Although not briefed, Plaintiffs appear to request expedited discovery, as well, as shown by the title and last paragraph of their Proposed Order (ECF No. 3-13).

Plaintiffs allege that it is "the leading supplier of telecommunications networking services to conventions centers throughout the country," including the Las Vegas Convention

Center ("LVCC"), and that Defendant Nussbaum was formerly employed by Smart City Networks for eight years as an operations manager at the LVCC. (Compl., 2:¶1, ECF No. 1.)

Plaintiffs' allegations of misappropriation of trade secrets relate to its "proprietary software, and business and technology methodologies and processes, including configurations of network equipment at the facilities for which it provides telecommunications services" described as "Rapidata." (Compl., 2:¶1.)

Plaintiffs allege that Defendant Nussbaum "abruptly resigned" on September 9, 2013, and "announced that he would be working for Cox Communications ('Cox')," but that "he actually accepted employment at [Plaintiffs'] competitor showNets, where he performs job functions that are identical to those he previously performed." (Compl., 3:¶3.) Plaintiffs allege that Defendant Nussbaum's activity in the days prior to his resignation shows "suspicious activities not in the usual course of his employment," including "unusual and exceptionally numerous connections to [the] Rapidata command sets for LVCC and other facilities," "deleting email messages and computer files from [Plaintiffs'] network and his work laptop," and "fail[ing] to perform the required exit interview . . . essentially disappearing from the premises after announcing his departure." (*Id*.)

Furthermore, Plaintiffs allege that "[u]pon information and belief, showNets is using, or intends to use, [Plaintiffs'] trade secrets obtained through hiring Nussbaum," because:

> The timing of Nussbaum's hire by showNets coincides with showNets' taking over as a subcontractor on the telecommunications services contract that had been provided by [Plaintiffs], but was awarded by the Las Vegas Convention and Visitors Authority ("LVCVA") to Cox at the end of [Plaintiffs'] term.

(Compl., 3:¶4.)

## II. LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions and temporary restraining orders, and requires that a motion for temporary restraining order include

1  "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and
2  irreparable injury, loss, or damage will result to the movant before the adverse party can be
3  heard in opposition," as well as written certification from the movant's attorney stating "any
4  efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).
5       Temporary restraining orders are governed by the same standard applicable to
6  preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181
7  F. Supp. 2d 1111, 1126 (E.D. Cal. 2001).  Furthermore, a temporary restraining order "should be
8  restricted to serving [its] underlying purpose of preserving the status quo and preventing
9  irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose
10 Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).
11      A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success
12 on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the
13 balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v.
14 Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Injunctive relief [is] an extraordinary
15 remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such
16 relief." *Id*. at 22.  The Ninth Circuit has held that "'serious questions going to the merits' and a
17 hardship balance that tips sharply toward the plaintiff can support issuance of an injunction,
18 assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies
19 v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).
20      "In deciding a motion for a preliminary injunction, the district court 'is not bound to
21 decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' &
22 Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting
23 *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).
24      "The urgency of obtaining a preliminary injunction necessitates a prompt determination
25 and makes it difficult to obtain affidavits from persons who would be competent to testify at

1 trial. The trial court may give even inadmissible evidence some weight, when to do so serves
2 the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734
3 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and*
4 *Procedure, Civil*, § 2949 at 471 (1973)).

5 "The court may issue a preliminary injunction or a temporary restraining order only if the
6 movant gives security in an amount that the court considers proper to pay the costs and damages
7 sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P.
8 65(c).

## III. DISCUSSION

As discussed below, the Court finds that Plaintiffs have, at the least, shown serious questions going to the merits and a hardship balance that tips sharply toward themselves. The Court also finds that Plaintiffs have shown a likelihood of harm in the absence of preliminary relief, and that an injunction is in the public interest. Accordingly, Plaintiffs' Motion for Temporary Restraining Order (ECF No. 3) will be granted so as to preserve the status quo pending the Court's full consideration of the parties' briefing on the Motion for Preliminary Injunction (ECF No. 4).

### A. Likelihood of Success on the Merits

Nevada's Uniform Trade Secrets Act ("NTSA") provides for civil and criminal penalties for misappropriation of trade secrets. Nev. Rev. Stat. §§ 600A.010–.100. The NTSA provides for injunctive relief where misappropriation is threatened or has occurred, and permits an award of damages for losses and for unjust enrichment caused by misappropriation. Nev. Rev. Stat. §§ 600A.040–.050.

Under the NTSA, a "trade secret" is:

> information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code that:

    (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use; and

    (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Nev. Rev. Stat. § 600A.030(5).

Upon consideration of the motion and the attached affidavits, the Court is satisfied that Plaintiffs have shown a likelihood of success in proving that the information relating to Rapidata is a "trade secret" under the NTSA, and that it is owned by Plaintiffs. Plaintiffs have shown a likelihood of success in showing that the information relating to Rapidata derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use. Plaintiffs have also shown that this information is the subject of efforts reasonable under the circumstances to maintain its secrecy.

In order to show "misappropriation" under the NTSA, Plaintiffs must also prove that the information was acquired by improper means, that Defendants knew or had reason to know that it was acquired by improper means, or that Defendants disclosed or used it without Plaintiffs' express or implied consent under certain conditions pursuant to subsection 2(c) of Nev. Rev. Stat. § 600A.030. Upon consideration of the affidavits attached to the motion, particularly those of Smart City Networks' President, Vice President of Technology, and Systems Administrator, the Court finds that Plaintiffs have met their burden to show a likelihood of success in proving that Defendants have misappropriated trade secrets in violation of the NTSA.

Because the Court finds that Plaintiffs have, at the least, shown serious questions going to the merits of their claims, and have shown a likelihood of success on the merits as to their claim for misappropriation of trade secrets, the Court finds that this element has been met.

/ / /

### B. Balance of Equities

Where the harm alleged by Plaintiffs is the result of misappropriation of trade secrets, the Court recognizes that this weighs strongly in favor of Plaintiffs. The Court recognizes that upon full briefing of the Motion for Preliminary Injunction (ECF No. 4), Defendants may respond with a showing of significant harm, actual or potential, which may tip the balance of equities in favor of Defendants. However, based upon the allegations in the Complaint, and the affidavits submitted with Plaintiffs' motion, the Court cannot find that significant harm to Defendants would result from enjoining Defendants from unlawful disclosure, or transfer or destruction of evidence relating to, any of Plaintiffs' trade secrets. For these reasons, the Court finds that the balance of equities does tip sharply in favor of Plaintiffs.

### C. Likelihood of Harm in the Absence of Preliminary Relief and Public Interest

The Court finds that any unlawful disclosure and use of Smart City's trade secrets would likely harm Plaintiffs by diminishing any value such information has by virtue of being not known or readily ascertainable by the public. Furthermore, any transfer or destruction of property, documents, files, reports, or other materials that Defendants have in their possession, custody, or control that were obtained from Plaintiffs would be harmful to the Court's disposition of this action on the merits. Because monetary damages may be insufficient to remedy such harm, the Court finds that Plaintiffs have met their burden to show a likelihood of irreparable harm in the absence of preliminary relief.

Finally, the Court finds that the public interest is served by preservation of trade secrets under the NTSA as well as preservation of the status quo pending resolution of an action for misappropriation of trade secrets; and that Plaintiffs have met their burden to show that this element is met.

### D. Security

Because the Court's injunction simply enjoins Defendants from unlawful disclosure or

use of Plaintiffs' trade secrets or other confidential or proprietary information, and from transferring or destroying any evidence relating to the Court's disposition of this action on the merits, the Court finds that a nominal bond is appropriate. Therefore this Order shall go into effect upon Plaintiffs' posting of a bond in the amount of $100.000.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Temporary Restraining Order (ECF No. 3) is **GRANTED**, as follows. Defendants, and any person or entity acting in concert with them, are enjoined from:

(1) disclosing or misappropriating for their own use or benefit, any of Plaintiffs' trade secrets or other confidential or proprietary information;

(2) transferring or destroying all property, documents, files, reports, or other materials that Defendants have in their possession, custody, or control that were obtained from Plaintiffs;

(3) destroying or spoliating any documents or records of any kind, whether in written or electronic form, concerning Plaintiffs' trade secrets or other confidential or proprietary information; and

(4) all actions in violation of Defendant Nussbaum's contractual commitments in favor of Plaintiffs.

**IT IS FURTHER ORDERED** that this Order shall go into effect upon Plaintiffs' posting of a bond in the amount of **ONE HUNDRED ($100.00) DOLLARS**.

**IT IS FURTHER ORDERED** that a hearing on the Motion for Preliminary Injunction (ECF No. 4) shall be set by the Court upon the conclusion of briefing on the motion, or as otherwise ordered by the Court.

**DATED** this 26th day of September, 2013.

_____
Gloria M. Navarro
United States District Judge