UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Smart City Holdings, LLC; and Smart City Networks, L.P., | ) ) ) |
| Plaintiffs, | ) Case No.: 2:13-cv-01751-GMN-GWF ) |
| vs. | ) **ORDER** ) |
| showNets, LLC; and Scott Nussbaum, | ) ) |
| Defendants. | ) ) |

Pending before the Court is the Motion for Preliminary Injunction (ECF No. 4) filed by Smart City Networks, L.P. ("Smart City Networks") and its parent company, Smart City Holdings, LLC ("Smart City Holdings") (collectively, "Plaintiffs" or "Smart City"). On September 26, 2013, the Court issued a temporary restraining order (ECF No. 16), and scheduled a hearing for October 10, 2013.

**I.     BACKGROUND**

Plaintiffs filed their Complaint (ECF No. 1) against entity Defendant showNets, LLC ("showNets") and Defendant Scott Nussbaum, an individual, alleging six claims for relief: (1) Misappropriation of Trade Secrets, Nev. Rev. Stat. § 600A against Nussbaum and showNets; (2) Tortious Interference with Prospective Business Advantage against showNets and Nussbaum; (3) Declaratory Judgment, Nev. Rev. Stat. § 30.010–160; (4) Breach of Contract against Nussbaum; (5) Breach of Implied Covenant of Good Faith and Fair Dealing against Nussbaum; and (6) Tortious Interference against showNets.

Plaintiffs allege that Smart City is "the leading supplier of telecommunications networking services to conventions centers throughout the country," including the Las Vegas Convention Center ("LVCC"), and that Defendant Nussbaum was formerly employed by Smart

City for eight years as an operations manager at the LVCC. (Compl., 2:¶1, ECF No. 1.)

Plaintiffs' allegations of misappropriation of trade secrets relate to Smart City's "proprietary software, and business and technology methodologies and processes, including configurations of network equipment at the facilities for which it provides telecommunications services" described as "Rapidata." (Compl., 2:¶1.)

Plaintiffs allege that Defendant Nussbaum "abruptly resigned" on September 9, 2013, and "announced that he would be working for Cox Communications ('Cox')," but that "he actually accepted employment at [Plaintiffs'] competitor showNets, where he performs job functions that are identical to those he previously performed." (Compl., 3:¶3.) Plaintiffs allege that Defendant Nussbaum's activity in the days prior to his resignation shows "suspicious activities not in the usual course of his employment," including "unusual and exceptionally numerous connections to [the] Rapidata command sets for LVCC and other facilities," "deleting email messages and computer files from [Plaintiffs'] network and his work laptop," and "fail[ing] to perform the required exit interview . . . essentially disappearing from the premises after announcing his departure." (*Id.*)

Furthermore, Plaintiffs allege that "[u]pon information and belief, showNets is using, or intends to use, [Plaintiffs'] trade secrets obtained through hiring Nussbaum," because:

> The timing of Nussbaum's hire by showNets coincides with showNets' taking over as a subcontractor on the telecommunications services contract that had been provided by [Plaintiffs], but was awarded by the Las Vegas Convention and Visitors Authority ("LVCVA") to Cox at the end of [Plaintiffs'] term.

(Compl., 3:¶4.)

## II. **LEGAL STANDARD**

A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.  The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

"The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial.  The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)).

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

### III.   DISCUSSION

In the TRO, the Court found that Smart City had, "at the least, shown serious questions going to the merits and a hardship balance that tips sharply toward themselves." (Order, Sept. 26, 2013, ECF No. 16.)  The Court also found that Plaintiffs had shown a likelihood of harm in the absence of preliminary relief, and that an injunction is in the public interest. (*Id*.)

**A.  Likelihood of Success on the Merits**

Nevada's Uniform Trade Secrets Act ("NTSA") provides for civil and criminal penalties for misappropriation of trade secrets. Nev. Rev. Stat. §§ 600A.010–.100.  The NTSA provides for injunctive relief where misappropriation is threatened or has occurred, and permits an award of damages for losses and for unjust enrichment caused by misappropriation. Nev. Rev. Stat. §§ 600A.040–.050.

Under the NTSA, a "trade secret" is:

> information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Nev. Rev. Stat. § 600A.030(5).

To obtain a preliminary injunction, Plaintiffs must show a likelihood of success in proving that:

- the information relating to Rapidata is a "trade secret" under the NTSA, and that it is owned by Plaintiffs;
- the information relating to Rapidata derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use; and
- this information is the subject of efforts reasonable under the circumstances to maintain its secrecy.

In order to show "misappropriation" under the NTSA, Plaintiffs must also show that the information was acquired by improper means, that Defendants knew or had reason to know that

it was acquired by improper means, or that Defendants disclosed or used it without Plaintiffs' express or implied consent under certain conditions pursuant to subsection 2(c) of Nev. Rev. Stat. § 600A.030.  Nev. Rev. Stat. § 600A.030(2).

"Improper means" includes theft, misrepresentation, espionage through electronic means, and willful breach of a duty to maintain secrecy or any other duty imposed by common law, statute, contract, license, protective order or other court or administrative order. Nev. Rev. Stat. § 600A.030(1).

Having considered the parties' briefs, and oral arguments, and as stated on the record at the hearing, the Court finds that Plaintiffs have met their burden to show serious questions going to the merits of their claims.

### B. Balance of Equities

In the TRO, the Court recognized the harm that would result to Plaintiffs from a misappropriation of their trade secrets, but also recognized that upon full briefing, "Defendants may respond with a showing of significant harm, actual or potential, which may tip the balance of equities in favor of Defendants." (Order, Sept. 26, 2013, ECF No. 16.)

Having considered the parties' briefs, and oral arguments, and as stated on the record at the hearing, the Court finds that Plaintiffs have met their burden to show that the balance of equities tips sharply in their favor, particularly where the relief requested creates minimal risk of harm or inconvenience to Defendants.

### C. Likelihood of Harm in the Absence of Preliminary Relief and Public Interest

The Court finds that any unlawful disclosure and use of Smart City's trade secrets would likely harm Plaintiffs by diminishing any value such information has by virtue of being not known or readily ascertainable by the public.  Furthermore, any transfer or destruction of property, documents, files, reports, or other materials that Defendants have in their possession, custody, or control that were obtained from Plaintiffs would be harmful to the Court's

disposition of this action on the merits. Because monetary damages may be insufficient to remedy such harm, the Court finds that Plaintiffs have met their burden to show a likelihood of irreparable harm in the absence of preliminary relief.

Finally, the Court finds that the public interest is served by preservation of trade secrets under the NTSA as well as preservation of the status quo pending resolution of an action for misappropriation of trade secrets; and that Plaintiffs have met their burden to show that this element is met.

Plaintiffs have already posted a nominal bond of $100.00, and the Court finds that no further bond is necessary or required.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Preliminary Injunction (ECF No.4) is **GRANTED in part and DENIED in part**, as follows. Defendants, and any person or entity acting in concert with them, are enjoined from:

(1) disclosing or misappropriating for their own use or benefit, any of Plaintiffs' trade secrets or other confidential or proprietary information;

(2) transferring or destroying all property, documents, files, reports, or other materials that Defendants have in their possession, custody, or control that were obtained from Plaintiffs;

(3) destroying or spoliating any documents or records of any kind, whether in written or electronic form, concerning Plaintiffs' trade secrets or other confidential or proprietary information; and

(4) all actions in violation of Defendant Nussbaum's contractual commitments in favor of Plaintiffs.

**DATED** this 10th day of October, 2013.

_____
Gloria M. Navarro
United States District Judge