1  Paul R. Hejmanowski, Bar No. 94
   phejmanowski@lionelsawyer.com
2  A. William Maupin, Bar No. 1315
   wmaupin@lionelsawyer.com
3  Christopher Mathews, Bar No. 10674
   cmathews@lionelsawyer.com
4  LIONEL SAWYER & COLLINS
   300 South Fourth Street, 17th Floor
5  Las Vegas, Nevada 89101
   Telephone: (702) 383-8888
6  Facsimile: (702) 383-8845

7  Bruce S. Meyer (pro hac vice)
   Jessie B. Mishkin (pro hac vice)
8  Kimberly M. Rosensteel (pro hac vice)
   WEIL, GOTSHAL & MANGES LLP
9  767 Fifth Avenue
   New York, NY 10153
10 (212) 310-8000

11 *Attorneys for Plaintiffs Smart City Holdings, LLC
   and Smart City Networks, L.P.*

12 Dennis L. Kennedy, Nev. Bar No. 1462
   Sarah E. Harmon, Nev. Bar No. 8106
13 Russell J. Burke, Nev. Bar No. 12710
   Bailey❖Kennedy
14 8984 Spanish Ridge Avenue
   Las Vegas, Nevada 89148-1302
15 Telephone Number: (702) 562-8820
   Fax Number: (702) 562-8821
16 DKennedy@BaileyKennedy.com
   Sharmon@BaileyKennedy.com
17 RBurke@BaileyKennedy.com

18 *Attorneys for Defendant, showNets, LLC*

19

20
                  **UNITED STATES DISTRICT COURT**
                      **DISTRICT OF NEVADA**

21 SMART CITY HOLDINGS, LLC, a Delaware
   limited liability company, and SMART CITY      Case No.  2:13-cv-01751-GMN-GWF
22 NETWORKS, L.P., a Florida limited
   partnership,

23
                     Plaintiffs,
24                                                 **PERMANENT INJUNCTION**

   vs.
25

   SHOWNETS, LLC, an Arizona limited
26 liability company, and SCOTT NUSSBAUM,
   an individual,

Defendants.

This PERMANENT INJUNCTION ("Injunction") is agreed upon and stipulated to by and between Plaintiffs SMART CITY HOLDINGS, LLC and SMART CITY NETWORKS, L.P. (collectively, "Smart City") on the one hand, and Defendants SHOWNETS, LLC ("showNets") and SCOTT NUSSBAUM ("Nussbaum") on the other.  This Injunction is agreed to as of the 24th day of July, 2014, and shall become effective upon its entry by the Court.

## SUMMARY

This Injunction concerns Smart City's claims against Defendants in Case No. 2:13-cv-1751-GMN-GWF (the "Lawsuit").  Smart City is the former telecommunications services contractor for the Las Vegas Convention Center ("LVCC").  showNets is the subcontractor to Cox Nevada Telecom, LLC ("Cox"), the current telecommunications contractor for the LVCC. Nussbaum is a former employee of Smart City, currently employed by showNets.   After receiving an offer of employment from showNets, but before resigning from Smart City, Nussbaum copied dozens of digital files belonging to Smart City without Smart City's consent; specifically, a design document which depicts the IP addresses for the network that Smart City created for the LVCC and the configuration files for the LVCC network, which Smart City contends may also be used at other facilities (hereinafter, the "Smart City Information" or "Smart City's configuration files and network design document").  Smart City alleges that the Smart City Information embodies trade secrets and confidential and proprietary information belonging to Smart City.  showNets disputes that the Smart City Information is confidential, proprietary, or trade secret information.

Without Smart City's knowledge or consent, Nussbaum copied the Smart City Information to a USB thumb drive bearing the "Smart City" logo, took the Smart City thumb drive from Smart City's premises, and gave it to a showNets employee responsible for deploying

2

showNets' network configurations.  The showNets employee briefly viewed the contents of the thumb drive, understood that it contained Smart City's network configuration files, copied the files onto his work laptop and -- at the direction of his showNets supervisor -- copied the files to a cloud storage site used by showNets' engineers for future reference.  showNets and Nussbaum contend that showNets never demanded, requested, or otherwise encouraged Nussbaum to copy the Smart City Information.  showNets and Nussbaum further contend that showNets had no prior knowledge that Nussbaum intended to copy the Smart City Information.  showNets also contends that it has never used the Smart City Information for any purpose or disclosed it to any third parties.

Neither Nussbaum nor anyone at showNets informed Smart City that the files were taken or that they were given to showNets, because it is showNets' contention that the Smart City Information is not confidential, proprietary, or a trade secret.  However, Smart City engineers were able to reconstruct the taking of the files.  This Lawsuit followed.  Approximately two months after the commencement of this Lawsuit, and in connection with a preliminary injunction ordered by the Court, the Smart City Information was forensically and permanently deleted from both showNets' cloud storage site and its employee's laptop.

In the interest of promoting a fair and economical resolution to the Lawsuit, and preserving judicial resources, Smart City, showNets, and Nussbaum (collectively, the "Settling Parties"), agree to the entry of the following:

## STIPULATED FACTS

1.     Smart City provides telecommunications services to convention centers and meeting venues throughout the United States.  There are a number of markets, including, most recently, Las Vegas, Nevada, in which both Smart City and showNets conduct business.

2.     Smart City and its employees have, over the course of nearly three decades in the telecommunications industry, developed methods and techniques of operation which they have

refined repeatedly.  Smart City has amassed a body of proprietary information, algorithms, and processes including configuration files, command sets and related software that it tailors to meet the needs of its clients and the infrastructure available to support those needs. The methods and techniques, proprietary information, algorithms, processes, configuration files and command sets, and related software developed by Smart City are referred to herein as "Smart City's Trade Secrets."

3.      Smart City's Trade Secrets derive independent actual and potential economic value because they are not generally known and/or not readily ascertainable by proper means by the public or other persons.  Smart City has exercised reasonable efforts to maintain the secrecy of Smart City's Trade Secrets, including requirements that employees with access to information embodying Smart City's Trade Secrets enter into confidentiality agreements and acknowledge their obligation to keep such information confidential; restricting access to such information; maintaining such information on computer systems that are password-protected; monitoring access to such information; and successfully seeking temporary restraining orders and preliminary injunctions to protect Smart City's Trade Secrets.

4.      On August 13, 2013, Cox was awarded a contract with the Las Vegas Convention Center and Visitors Authority ("LVCVA") for telecommunications services at the LVCC.  showNets is a subcontractor to Cox for this contract.  Smart City was the telecommunications contractor at the LVCC prior to Cox.

5.      Nussbaum is a former Smart City employee based in Las Vegas, Nevada.  Nussbaum worked for Smart City from on or about August 12, 2005, to on or about September 9, 2013.  Nussbaum's last position was Manager of Operations for Smart City's telecommunications operations at the LVCC.  In that position, he had access to Smart City's Trade Secrets, which Smart City contends included network configuration files developed by Smart City for use at the LVCC.  While employed by Smart City, Nussbaum signed numerous acknowledgments that he

received and would comply with Smart City's confidentiality agreements and policies and not disclose "any confidential information, purposefully or inadvertently ... to any unauthorized person inside or outside the Company."

6.   In mid-August 2013, Nussbaum applied for work at the LVCC by submitting his resume to Cox.  Cox forwarded this resume to showNets.  Nussbaum's resume listed his professional credentials, work experience, and industry certifications.   On August 22, 2013, showNets employee Terry Funk ("Funk") wrote to Nussbaum:  "I realize these are interesting times and that you are in a delicate situation."  He offered Nussbaum a meeting "at your convenience."

7.   Funk and other showNets employees, including showNets' Chief Technology Officer, William Wayne Bishop ("Bishop"), interviewed Nussbaum.  showNets was aware at the time of the interview that Nussbaum was a then-current Smart City employee.

8.   Bishop reviewed Nussbaum's resume and his list of qualifications.  In the first entry under the heading "Professional Certifications," Nussbaum's resume stated that he was a "CCNP - Cisco Certified Network Professional."  This was untrue, and during the course of the interview Nussbaum admitted that it was untrue.

9.   Nonetheless, following the interview, showNets extended Nussbaum an offer of employment as Director of Engineering at the LVCC.  showNets contends that it made the offer based on Nussbaum's networking experience, various other professional certifications, and a positive reference from the LVCC.

10.   Nussbaum's offer letter from showNets, dated September 4, 2013, stated that he would be "reporting to and take direction from" Bishop.  Nussbaum accepted this offer of employment on September 6, 2013. The offer letter stated that Nussbaum would begin work the following Monday, September 9, 2013.

11.   Neither showNets nor Nussbaum advised anyone at Smart City about showNets' offer of employment.  showNets contends it was under no obligation to do so.

12.     Beginning on September 5, 2013, while he was still employed by Smart City, Nussbaum, without Smart City's knowledge or consent, copied Smart City's configuration files and network design document by using his login credentials as Smart City's Manager of Operations to perform at least 177 logins to at least 88 separate network devices at the LVCC.  Smart City contends that this Smart City Information embodies proprietary information, methods, and techniques for delivering telecommunication services developed by Smart City over the course of decades of work in the telecommunications industry.  showNets disputes that the Smart City Information embodies any confidential, proprietary, or trade secret information.

13.     Nussbaum then copied Smart City's configuration files and network design document to a portable data storage device, commonly known as a "thumb drive," which bore a Smart City logo on its exterior casing.  He also deleted all of his emails from Smart City's computer server.

14.     showNets and Nussbaum contend that showNets never demanded, requested, suggested or otherwise encouraged Nussbaum to copy the Smart City Information.   showNets and Nussbaum further contend that showNets had no knowledge that Nussbaum intended to copy the Smart City Information.

15.     On September 9, 2013, Nussbaum announced to Smart City that he was quitting his job, effective immediately.  He left Smart City's work place without conducting an exit interview, taking with him the thumb drive containing Smart City's configuration files and network design document.   That same day, he completed proof of citizenship, payroll forms, and other documents required to begin his employment with showNets.

16.     On September 10, 2013, Nussbaum reported for work at showNets.  He brought with him the Smart City-branded thumb drive containing Smart City's configuration files and network design document that he copied without Smart City's knowledge or consent.  He gave the thumb drive to Sean Morgan ("Morgan"), a Senior Network Operations Center manager for showNets.

17.     Morgan took the thumb drive from Nussbaum and copied the Smart City Information into

6

a folder called "Work\LVCC\SCN's Design\" on his laptop.

18.    Morgan then messaged Bishop as follows:

> *i have SCN's old design and networks if u want them later*
>
> *and their configs*
>
> *:)*

19.    Bishop responded:

> *throw them in the dropbox*
>
> *make a SCN folder*
>
> *in teh* (sic) *net design/lvcc folder*

20.    Morgan complied, uploading all of Smart City's configuration files and the network design document on the thumb drive to a folder called "\Network Design\lvcc\SCN" located on a cloud-based storage site called Dropbox. showNets' Dropbox site was set up to be generally accessible to showNets' engineers in the ordinary course of business in order to exchange information and work in progress.

21.    In the days following Nussbaum's departure, Smart City engineers were able to determine that Nussbaum's login accesses to the network hardware had sharply increased immediately prior to his departure.

22.    On September 20, 2013, counsel for Smart City sent letters to Nussbaum and to Paul Gillespie ("Gillespie") of showNets, demanding that Nussbaum and showNets cease and desist from "using in any way" any confidential information from Smart City, including, but not limited to "any information about device configurations for network equipment." The letters demanded return of Smart City's confidential information no later than September 23, 2013.

23.    On September 23, 2013, Margaret A. Gillespie of the May, Potenza, Baran & Gillespie, P.C. law firm, advised that showNets was actively reviewing Smart City's demand and that she would send "a substantive response" by early October 2013. Neither Nussbaum nor showNets

returned anything to Smart City by September 23, 2013.

24.    Smart City filed suit against showNets and Nussbaum on September 24, 2013.  Smart City's complaint alleges six claims for relief: (1) Misappropriation Of Trade Secrets, in violation of Nev. Rev. Stat. § 600A (the "Nevada Trade Secrets Act" or "NTSA"), against Nussbaum and showNets; (2) Tortious Interference With Prospective Business Advantage, against showNets and Nussbaum; (3) Declaratory Judgment, pursuant to Nev. Rev. Stat. § 30.010–160; (4) Breach Of Contract, against Nussbaum; (5) Breach Of Implied Covenant Of Good Faith And Fair Dealing, against Nussbaum; and (6) Tortious Interference With Contract, against showNets.

25.    The Nevada Trade Secrets Act provides for injunctive relief where misappropriation of trade secrets is threatened or has actually occurred.  Along with its complaint, Smart City requested a temporary restraining order and preliminary injunction against Nussbaum and showNets.  Both Nussbaum and showNets opposed this request.

26.    On September 26, 2013, the United States District Court for the District of Nevada (the "Court") entered a temporary restraining order against Nussbaum and showNets.  The Court found that Smart City had met the burden of proof required for entry of a temporary restraining order, and further found that "any unlawful disclosure and use of Smart City's trade secrets would likely harm Plaintiffs by diminishing any value such information has by virtue of being not known or readily ascertainable by the public," and that "the public interest is served by preservation of trade secrets" under the NTSA.

27.    On October 10, 2013, following a hearing attended by Nussbaum and his attorney, and showNets and its attorneys, the Court entered a preliminary injunction against Nussbaum and showNets.

28.    The Court enjoined Nussbaum and showNets (and any person or entity acting in concert with them) from:

        (a)    disclosing or misappropriating for their own use or benefit, any of Smart City's

8

trade secrets or other confidential or proprietary information;

(b)      transferring or destroying all property, documents, files, reports, or other materials that Defendants have in their possession, custody, or control that were obtained from Smart City;

(c)      destroying or spoliating any documents or records of any kind, whether in written or electronic form, concerning Smart City's trade secrets or other confidential or proprietary information; and

(d)      all actions in violation of Nussbaum's contractual commitments in favor of Smart City.

29.     On October 10, 2013, showNets and Nussbaum provided Smart City with the thumb drive containing Smart City's configuration files and network design document.

30.     On December 16, 2013, all copies of Smart City's configuration files and network design document were permanently deleted from Morgan's laptop and showNets' Dropbox site by an independent computer forensic examiner jointly retained by Smart City and showNets.

31.     showNets contends that it has not used any information from the Smart City Information, and that it has not disclosed such information to any third party.

32.     showNets also contends that it has not interfered with any of Smart City's existing or prospective contracts or business relations.

33.     In light of the foregoing stipulated facts, the prior orders of the Court, and the Settling Parties' joint request for entry of a permanent injunction, the Court concludes that a permanent injunction is appropriate and proper, and that entry of such an order is in the public interest.

NOW THEREFORE, in light of the foregoing, and by agreement of the Settling Parties, IT IS HEREBY ORDERED as follows:

1.      The Defendants and their affiliates are permanently enjoined as of the date hereof as follows:

a.   The Defendants and all persons acting on their behalf or in concert with them are permanently enjoined and restrained from either directly or indirectly misappropriating, using, disclosing, transferring, communicating, marketing, or selling, in any manner, in whole or in part, any of the Smart City Information or the information contained or embodied therein. However, the Defendants' use, disclosure, transfer, communication, marketing, and/or sale of any generic command sets, generic algorithms, or other non-proprietary and/or publicly-known information contained in the Smart City Information shall not constitute a violation of this Permanent Injunction.

b.   The Defendants and all persons acting on their behalf or in concert with them are permanently enjoined and restrained from either directly or indirectly misappropriating, using, disclosing, transferring, communicating, marketing, or selling, in any manner, in whole or in part, any trade secrets or confidential information unlawfully obtained by the Defendants from Smart City.

c.   To assure that showNets complies with its obligations and responsibilities with regards to paragraph 1(a), *supra*, showNets shall, commencing within six (6) months from the date of this Order, submit to three audits by an independent examiner, as set forth in the Audit Agreement, executed separately by showNets and Smart City.

2.   This injunction applies to, and shall be binding on, Defendants' successors and assigns.

3.   This Court shall retain jurisdiction over the Settling Parties for the purpose of enforcing the terms of this Injunction and the Settlement Agreement, as well as the Audit Agreement between Smart City and showNets.

IT IS FURTHER ORDERED that this Permanent Injunction shall replace and supersede the preliminary injunction entered on October 10, 2013. Effective as of the date of this order, the preliminary injunction is dissolved.

///

1    DATED this 24th day of July, 2014.

2                                      LIONEL SAWYER & COLLINS

3                                      /s/ Christopher Mathews
4                                      Paul R. Hejmanowski, Bar No. 94
                                       *phejmanowski@lionelsawyer.com*
5                                      A. William Maupin, Bar No. 1315
                                       *wmaupin@lionelsawyer.com*
6                                      Christopher Mathews, Bar No. 10674
                                       *cmathews@lionelsawyer.com*
7                                      300 South Fourth Street, 17th Floor
                                       Las Vegas, Nevada 89101
8                                      Telephone: (702) 383-8888

9                                      and

10                                     Bruce S. Meyer
                                       Jessie B. Mishkin
11                                     Kimberly M. Rosensteel
                                       WEIL, GOTSHAL & MANGES LLP
12                                     767 Fifth Avenue
                                       New York, NY 10153
13                                     (212) 310-8000
                                       *Attorneys for Plaintiffs Smart City Holdings,*
14                                     *LLC and Smart City Networks, L.P.*

15

16

17

18

19

20

21

22

23

24

25

11

BAILEY ❖ KENNEDY

/s/Sarah E. Harmon
Dennis L. Kennedy
Nevada Bar No. 1462
Sarah E. Harmon
Nevada Bar No. 8106
Russell J. Burke
Nevada Bar No. 12710
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: (702) 562-8820
Facsimile: (702) 562-8821
dkennedy@baileykennedy.com
sharmon@baileykennedy.com
rburke@baileykennedy.com

*Attorneys for Defendant showNets, LLC*

SCOTT NUSSBAUM

/s/_____
5480 Shodall Circle
Las Vegas, Nevada 89120

*Defendant*

# The Order signed by Chief Judge Navarro is set forth below on Page 12-1.

12

BAILEY ❖ KENNEDY

/s/_____
Dennis L. Kennedy
Nevada Bar No. 1462
Sarah E. Harmon
Nevada Bar No. 8106
Russell J. Burke
Nevada Bar No. 12710
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: (702) 562-8820
Facsimile: (702) 562-8821
dkennedy@baileykennedy.com
sharmon@baileykennedy.com
rburke@baileykennedy.com

*Attorneys for Defendant showNets, LLC*


SCOTT NUSSBAUM

/s/ _Scott Nussbaum_
5480 Shodall Circle
Las Vegas, Nevada 89120

*Defendant*



**IT IS SO ORDERED.**

_____
Gloria M. Navarro, Chief Judge
United States District Court

**DATED:  07/25/2014**